IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OIL & GAS MANAGEMENT, INC., et al., | )<br>) |
| Plaintiffs, | ) Civil Action No. 2:12-cv-1279 |
| v. | )<br>) |
| | ) Judge Mark R. Hornak |
| BURNETT OIL CO., INC., et al., | )<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

This action was removed to this Court from Pennsylvania state court by Defendants. They relied on the bankruptcy-related removal provisions of 28 U.S.C. §§ 1334 and 1452. At issue in this case are interests and rights in and under certain oil and gas leases ("leases") relating to approximately 33,000 acres of land located in Pennsylvania, Maryland, and West Virginia, presently held among multiple entities, including the now-bankrupt Defendant O&G Equity Holding, LLC. ("O&GE"). Compl., ECF No. 1-3. Pending before the Court are Defendants' Motion to Transfer Venue, ECF No. 3, and Plaintiffs' Motion to Dismiss, Motion to Sever, or in the alternative, to Abstain and Remand, ECF No. 11 (collectively, "Motions").[1] The Court concludes that the resolution of these motions is STAYED pending the development of further

---

[1] In an apparent effort to untie the Gordian knot of competing state and federal venues this litigation has created, Plaintiffs have filed a "notice" of "voluntary dismissal" of O&GE as a Defendant. ECF No. 26. However, Defendants have argued with some logical force that such a maneuver would not work as neatly as Plaintiffs imagine, since the parties do not dispute that O&GE (which is part of the bankruptcy proceeding in Texas) possesses an undivided interest in a portion of the property rights which are tied up in the bankruptcy estate. Thus, according to Defendants, whether O&GE is in or out as a party, given the nature of the interests at issue in this action, and their relation to the bankruptcy estate, the complicated venue and jurisdictional issues of this case remain. Given the now-confirmed applicability of the automatic stay, Plaintiffs' effort to purge O&GE from this case appears to lose much of its significance.

proceedings in the United States Bankruptcy Court for the Southern District of Texas regarding Debtor-Defendant O&GE.[2]

On January 10, 2013, the Bankruptcy Court for the Southern District of Texas issued an "Agreed Order" stating "The parties stipulate that the action presently captioned *Oil and Gas Management, Inc. et al v. Burnett Oil Co., Inc., et al*, presently pending in the United States District Court for the Western District of Pennsylvania (the "PA District Court") at Case No. 12-cv-1279 (the "Litigation") is subject to the automatic stay imposed under 11 U.S.C. § 362(a)." ECF No. 30 ¶ 2 ("Order").[3] The Order went on to state that "[n]otwithstanding the preceding Paragraph 2," the "PA District Court" could still decide the pending Motion to Transfer and Motion to Abstain, but that whatever the "PA District Court's" ruling was on *either* matter, the parties then "must seek relief from the automatic stay with [the Bankruptcy Court]." *Id.* ¶¶ 3-5. The plain implication of Paragraphs 3 through 5 of the Order is that no matter this Court's rulings on any of the pending Motions here, this litigation will remain subject to the automatic bankruptcy stay and control of the Texas Bankruptcy Court.

That Order places this Court in the tenuous position of being asked to rule on the Motions in the context of a pending bankruptcy proceeding. This case is agreed by all parties, and confirmed by a Bankruptcy Judge, to be statutorily stayed by virtue of 11 U.S.C. § 362(a). The parties have in this case previously vigorously disputed matters such as whether the bankruptcy stay applies to the instant action at all; if it applies, whether it applies to all parties or just as to O&GE; whether the case should be remanded to the Court of Common Pleas of Westmoreland County, Pennsylvania; and whether the case should be transferred to the District Court or the

---

[2] O&GE contends that this litigation will necessarily affect the bankruptcy estate, given the Plaintiffs' efforts to impact title to certain gas interests as to which O&GE holds a small, but undivided, interest along with the other Defendants. *See* Defs.' Br. Supp. Mot. Transfer Venue, ECF No. 4, at 1.

[3] The Order can be found on the Bankruptcy Court's docket at Bkr. Dkt. No.12-34467 ECF No. 58.

2

Bankruptcy Court for the Southern District of Texas. But what they have now plainly agreed on is that the instant litigation is "subject to" the automatic stay provisions of § 362(a), and the Texas Bankruptcy Court has validated that conclusion. Order ¶ 2. As our Court of Appeals has held, "[b]ecause the automatic stay serves the interests of both debtors and creditors, it may not be waived and its scope may not be limited by a debtor," *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).[4]

The general applicability of the stay here is confirmed by other provisions of the Order. While the Order purports to allow this Court to rule on the Motion to Transfer and the Motion to Abstain, even if this Court were to rule on them by determining, for example, that a remand to state court was appropriate, Plaintiffs would still need to "seek relief from the automatic stay with [the Bankruptcy] Court to further pursue its said claims against the Debtor . . . and the non-Debtor Defendants." Order ¶ 4.[5] And if this Court elected to transfer the case to Texas, Plaintiffs would still "be entitled to . . . seek relief from the automatic stay before the Texas District Court or this Court." *Id.* ¶ 5. Therefore, by the very terms of the Order, there is no decision that this Court would render that would result in the Bankruptcy Court *not* having to determine the continuation, along with the scope and applicability, of the § 362(a) stay on all

---

[4] This Court concurs that at least on the face of this action, the § 362(a) stay would seem to apply to it. Section 362(a) provides that the automatic stay applies to "the commencement or continuation, including the issuance or employment of process, of a *judicial*, administrative, or other action nor proceeding *against the debtor* . . ." (emphasis added). "The scope of the automatic stay is broad. All proceedings are stayed, including judicial proceedings. Proceeding in this sense encompasses civil actions." *Maritime Elec. Co.*, 959 F.2d at 1203. This case was originally brought by Plaintiff Oil & Gas Management, Inc. and others against the Debtor-Defendant O&GE and others, which, *inter alia*, seeks the reverter of Debtor-Defendant's working interest in certain oil and gas leases.

[5] It is true that ordinarily, "all proceedings in a single case are not lumped together for purposes of automatic stay analysis," and thus "[m]ultiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross-claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay." *Maritime Elec. Co.*, 959 F.2d at 1204. However, the terms of Paragraph 4 of the Order make it clear that this stay extends to all of Plaintiffs' claims against all Defendants, and so it would be inappropriate for this Court to attempt to disaggregate claims or defendants given the construction of the scope of the stay as confirmed by the Bankruptcy Court, and the inevitable attention they will be given by the Bankruptcy Court regardless of this Court's actions.

3

aspects of the instant litigation. That would make any ruling by this Court merely advisory in effect. The Motions are now really the tail of a much more significant dog – the relationship of this litigation to the bankruptcy estate, an issue plainly within the province of the Texas Bankruptcy Court, and the very sort of issue for which the automatic stay exists in the first place.

This Court's ruling on the Motions will in reality do little if anything to move this case forward anywhere. If the Motion to Transfer is denied, it will remain stayed, either in this Court or on remand, in a Pennsylvania state court. If that Motion is granted, the case will remain stayed, but in Texas. What these parties must resolve in order for this litigation to proceed is their dispute as to whether and how this case is intertwined with and related to the pending Texas bankruptcy case due to the nature of O&GE's gas interests in conjunction with the interests of the other Defendants. This Court should not weigh in on that question as it is seemingly central to the matters before the Bankruptcy Court. If that Court rules that this litigation does not impact the bankruptcy estate, then the validity of the Defendants' removal of it to this Court under 29 U.S.C. § 1334 will be called into question, but the litigation may proceed, likely in some Pennsylvania court. On the other hand, if the Bankruptcy Court rules that this case does potentially impair the estate, it may proceed nowhere but in that Court, unless that Court orders otherwise. Therefore, the Motions are quite collateral to the question at the heart of this dispute, a question that is for that Texas Bankruptcy Court to decide. The parties should litigate that issue there and now, as its resolution will fundamentally direct the disposition of the Motions (or perhaps, will even affect their necessity).

In light of the foregoing, it might seem easier for this Court to rely on 28 U.S.C. § 1412 to simply transfer the case to the Bankruptcy Court, as Defendants urge.[6] However, the Court

---

[6] 28 U.S.C. § 1412 seems to be the appropriate statutory provision for venue transfer of proceedings "related to" bankruptcy cases, even though its language only directly speaks to proceedings "under" the Bankruptcy Code. *See*

4

believes that a transfer of venue of the entire case is not the appropriate, nor necessary, vehicle to allow the Bankruptcy Court to make important bankruptcy-related determinations. First, it seems to be an open question whether this Court possesses the power to grant a venue transfer motion once it has determined that an automatic stay halts the litigation, as Defendant's Motion to Transfer is still part of a "proceeding *originally brought* against the debtor." *Maritime Elec. Co.*, 959 F.2d at 1204 (emphasis in original) (quotation marks omitted).

Second, this Court believes that transfer of venue, even if permissible, would also be inappropriate and inequitable at this time. To grant the § 1412 transfer would presuppose the centrality of O&GE's interests to the instant litigation (a premise Plaintiffs dispute), and that O&GE's interests would outweigh Plaintiffs' interests in having the case litigated locally. Those interests cannot be properly balanced without a determination from the Bankruptcy Court as to the centrality *vel non* of the bankruptcy to this litigation, and the scope of the automatic stay.

The fact that the parties to this action have already appeared to represent their interests before the Bankruptcy Court in Texas is made evident by the existence of the Order itself. Moreover, by its own terms, that Order contemplates that they will do so at least once more regardless of any action this Court may take. Therefore, it appears that the parties to this litigation are certainly capable of having their bankruptcy-related disputes heard in the Bankruptcy Court, and that that Court is certainly positioned to do so. To allow the parties to do so by way of this Court's declination to disrupt the automatic stay, rather than to do so by transfer of the entire case to a location that may not have much at all to do with its ultimate disposition, is the approach more closely tailored to the facts of this case and the situation of the parties.

---

*Abrams v. Gen. Nutrition Cos.*, Civ. A. No. 06-1920, 2006 WL 2739642, at *8 (D.N.J. Sept. 25, 2006) (collecting cases) (citing *Maritime Elec. Co.*, 959 F.2d at 1212).

5

Simply put, if the Bankruptcy Court lifts the stay because it concludes that this case may proceed without impairing the estate, then the case should probably remain here in Pennsylvania, likely in state court. On the other hand, if the stay is not lifted because the claims and defenses in this action are inherently at the middle of the bankruptcy case, or because it would disrupt O&GE's ability to enjoy a "breathing spell" as it proceeds through bankruptcy, then the purpose of the stay in the first place will have been fulfilled, and the Bankruptcy Court will steer the proper course for this litigation.[7] Without those central issues being decided by the Bankruptcy Court in the context of an existing stay, any action taken by this Court on the Motions would do little more than give either the Plaintiffs or Defendants an interim tactical litigation advantage, without furthering the ultimate and proper disposition of the matter.

The terms of the Order also make it apparent that what the Bankruptcy Court has *not* done is lift the stay under §362(d) for the purpose of permitting litigation in Pennsylvania to continue (or for any other purpose). "Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." *Maritime Elec. Co.*, 959 F.2d at 1204. "Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*." *Id.* at 1206. Here, the Bankruptcy Court has by its Order, with the parties in agreement, confirmed the applicability of the stay to this case,

---

[7] *See Maritime Elec. Co.*, 959 F.2d at 1204 (internal marks omitted):

> The automatic stay serves several purposes. First, it gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. The stay permits a bankrupt to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy. Second, the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. In other words, the stay protects the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors.

and has thereby confirmed the primacy of its role in resolving the key questions which will ultimately determine whether this civil action should proceed, and if so, when and where.

Therefore, this Court concludes that given the § 362(a) stay of this litigation, consented to by the parties and confirmed by Order of the Bankruptcy Court for the Southern District of Texas, this Court may not render a decision on the Motions or continuing the instant litigation in any way.[8] The Clerk of Court is instructed to mark this case as STAYED by virtue of 11 U.S.C. § 362(a). Pursuant to the standard practices of this Court, it will be administratively closed as a result, subject to being reopened for cause shown. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: January 16, 2013
cc: All counsel of record

---

[8] This Court views the stay for what it is – a stop sign directly in front of this litigation. That said, even if by virtue of the Order, ruling on the Motions was considered discretionary with this Court, it would nonetheless decline to exercise its authority here, given the central role of the Bankruptcy Court as to matters related to a bankruptcy estate. If that Court concludes that contrary to Defendants' assertions, this litigation (which may affect O&GE's relatively small undivided interests in the lease) will not improperly impinge on the bankruptcy case, then this case may be litigated sooner and likely in a court in this District. If the Texas court concludes to the contrary, then the Motions take on far less significance.

7